UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>KENAI RIVERFRONT CONDOMINIUMS, LLC,<br><br>            Debtor. | Case No. A09-00493-DMD<br>Chapter 11<br><br>**Filed On**<br>**4/13/10** |

**MEMORANDUM REGARDING STAY RELIEF**

The debtor purchased two undeveloped commercial lots in Soldotna in June of 2006.  The debtor paid $950,000 for the lots with $200,000 down and the balance due in full by June of 2009.  The payment was not made and the debtor filed for chapter 11 relief on July 20, 2009.[1]  Denali Holdings, LLC, assignee of the underlying note and deed of trust, filed a motion for relief from stay on September 3, 2009.[2]  The debtor opposed the motion.[3]  Unsuccessful settlement negotiations ensued.  A hearing on the motion for relief from stay was held on March 25, 2010.  After reviewing the law and the evidence,  I conclude that the secured creditor Denali Holdings is entitled to adequate protection payments of $4,000.00 per month under 11 U.S.C. § 362(d)(1) and a drop dead provision.  Further relief under 11 U.S.C. § 362(d)(2) or (d)(3) will not be granted at this time.

---

[1] Petition, filed July 20, 2009 (Docket No. 1).

[2] Mot. for Relief from Stay, filed Sept. 3, 2009 (Docket No. 18).

[3] Opp'n to Mot. for Relief from Stay, filed Sept. 18, 2009 (Docket No. 21).

The two lots in question are located on the Sterling Highway in Soldotna. The first lot is 600 feet long and narrow with 100 feet of Kenai River frontage. It is commonly referred to as Lot 01 based on the tax identification number the Kenai Peninsula Borough has assigned it: No. 06024001. This lot is adjacent to the second parcel, which has no river frontage. The second parcel is commonly referred to as Lot 12, again based upon its tax identification number: No. 06025212. The total land area for the two lots is 126,324 square feet or 2.9 acres. The topography of the lots is generally level and at grade with the Sterling Highway, except that Lot 01 slopes downward near the Kenai River. The lots have 275 feet of Sterling Highway frontage and 100 feet of Kenai River frontage. There is an RV park with electrical hook-ups on Lot 12. There are also some small buildings on Lot 12 which are used for storage. The lots are adjacent to the Riverside Hotel, Restaurant and Lounge. A separate corporation, River Place Development Corp., leases these adjacent lots. River Place Development Corp. is owned by the debtor's principals, Robert Larocco and Mark Patterson. The two lots containing the hotel complex are also assets of the bankruptcy estate.[4]

Denali Holdings seeks relief from stay under 11 U.S.C. § 362(d)(1), (d)(2) and (d)(3). 11 U.S.C. § 362(d)(1) provides that a court shall grant relief from stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."[5]

---

[4] After filing the petition, the debtor granted a $60,000 lien on the Riverside Hotel lots to the IRS for payroll tax obligations. The debtor intends to invalidate the lien. The lien does not include Lots 01 and 12.

[5] 11 U.S.C. § 362(d)(1).

Subsection (d)(2) provides for stay relief if "the debtor does not have an equity in such property" and "such property is not necessary to an effective reorganization."[6]  The provisions of subsections (d)(1) and (d)(2) are disjunctive; a creditor only needs to prove entitlement to relief under one section or the other, but not both.[7]  Subsection (d)(3) provides for relief from stay in single asset real estate cases under certain conditions.  It is my view that subsection (d)(3) is disjunctive from (d)(1) and (d)(2).  A creditor does not have to prove entitlement to relief under (d)(1) or (d)(2) to receive relief from stay under (d)(3).

To determine whether the interest of Denali Holdings is adequately protected, I must determine the value of the two parcels.  Steve MacSwain and Trevor Lund of MacSwain Associates valued the property at $1.3 million as of August 25, 2009.  That value is unrealistic and not credible given the lack of a market for commercial real property in Soldotna at this time. Moreover, the comparable sales used to justify the appraisal value are unreliable.  MacSwain uses comps from as early 2003, 2006, and 2007 to justify his present value of $10.29 per square foot.  The only actual sale above $10.29 per square foot was when Lowe's had to purchase adjacent property for an access driveway in 2007.  That sale was for just 33,005 square feet.  The land sold to Lowe's doesn't approach the size of the subject property, which is four times as large.  The remaining comp sales were for around $7.00 to $8.00 a square foot, far from MacSwain's stated value of $10.29.

---

[6] 11 U.S.C. § 362(d)(2).

[7] *Sun Valley Ranches Inc. v. Equitable Life Assurance Soc'y (In re Sun Valley Ranches, Inc.)*, 823 F.2d 1373, 1376 (9th Cir. 1987).

The Soldotna economy is in poor shape. McSwain noted that the area had seen moderate growth over the past few years, but conceded that "Soldotna has also realized the national economic downturn as evident by several retail property foreclosures and small shop owners going out of business."[8] Tourism has been hit especially hard. Joint Exhibit R indicates that sales in the Soldotna tourism industry declined a whopping 85% from the first quarter of 2008 to the first quarter of 2009. First quarter tourism sales went from $4.294 million in 2008 to $642,000 in 2009.[9] Third quarter 2009 Soldotna tourism sales declined 63.4% from $9.6 million in 2008 to $3.5 million in 2009.[10] There is no reason to believe, given the national economy's continued unemployment rate of about 10%, that there will be a sharp turnaround in these numbers in 2010.

Nor is there reason for optimism because the debtor recently dropped the listing price of the two lots to about $1.2 million. The property was originally listed for sale at just over $2 million in 2008. The price was reduced to $1.565 million in June of 2009. The lots are now listed at $1,199,000. Despite constantly dropping the price, the debtor has never had an offer at any price for the property. There are a number of other commercial properties in the same area that are available for sale. Businesses known as "BJ's" and "The Crossing" are currently for sale. The debtor's broker, Don A. McKay, indicated that the Blockbuster

---

[8] Joint Exhibit V, at 5-6.

[9] Joint Exhibit R.

[10] Joint Exhibit U, at page marked "Soldotna, Page 111, Third Quarter 2009."

4

franchise may soon be in bankruptcy. Additionally, a nearby property known as the Timberwolf Condominiums is currently in bankruptcy. Moreover, there is no present financing available for the purchase of raw land. There is simply no ready market for such property.

Given these circumstances, what is the present fair market value of the two lots? Denali Holdings has been inconsistent in its pleadings regarding value. In its motion for relief from stay, it relies upon the assessed values of the lots, for a fair market value of $967,200.00.[11] It its reply brief, Denali Holdings contends the actual value of the property is $896,900.00.[12] Mark White, a broker in Soldotna employed by Denali Holdings, valued the two lots at $1,085,663.00 as of March 9, 2010. White did not testify but his broker's opinion of value letters were submitted as exhibits.[13] I conclude that a value of $1 million is appropriate for the two lots given the overall circumstances of this case at this time.

After deducting 8% for sale transaction costs, there would be approximately, $920,000.00 available to cover Denali Holding's secured claim. As of March 25, 2010, its claim exceeded $840,000.00. But is this secured claim adequately protected? Interest and attorney's fees may erode Denali Holding's meager equity cushion unless some form of additional adequate protection is required. Therefore, I will require payments of $4,000.00

---

[11] Mot. for Relief from Stay (Docket No. 18), at 4.

[12] Reply Re: Motion for Relief from Stay, filed Sept. 28, 2009 (Docket No. 25), at 5.

[13] Joint Exhibits S and T.

a month to the secured creditor. The payments shall begin on May 1, 2010, and shall continue until this case is dismissed or converted or a plan is confirmed. Should the debtor default in a payment, Denali Holding will receive relief from stay without further notice or hearing.

Denali Holding is not entitled to relief from stay under 11 U.S.C. § 362(d)(2). Subsection (d)(2)(A) requires that the creditor prove that there is no equity in the property. Here, I have found that there is equity of about $160,000.00. Because the first prong of subsection (d)(2) is not satisfied, Denali holdings cannot obtain relief from stay under § 362(d)(2).

Denali Holding also seeks relief from stay under 11 U.S.C. § 362(d)(3). Subsection (d)(3) allows a court to grant relief from stay under the following circumstances:

> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later –
>
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
> (B) the debtor has commenced monthly payments that–

> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and,
>
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate;[14]

The term "single asset real estate" is defined in 11 U.S.C. § 101(51B) as follows:

> The term 'single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.[15]

The debtor does not readily fit within this definition. Its real property does not constitute a single property or project. As it is currently configured, there are two lots used in conjunction with the hotel, restaurant and bar complex. Lots 01 and 12 are not used by the hotel, however. Rather, Lot 12 is used for RV parking during the summer months. The debtor intends to use the highway frontage on Lots 01 and 12 for guided fishing bungalows

---

[14] 11 U.S.C. § 362(d)(3).

[15] 11 U.S.C. § 101(51B).

7

this season, but hasn't used them in the past for such a function. In the past, Lot 01 has not been used for any commercial purpose. I conclude that the real property owned by the debtor is not a single property or project. There are multiple properties used for a variety of projects by its tenant, River Place Investment Corp.

There are arguments against this conclusion. At one time the debtor sought to combine the properties and build luxury condominiums. That project is now dead. Even if it were resurrected, however, the debtor still planned to develop the highway frontage on the upper portions of Lots 01 and 12 for independent, separate uses. It was not just one property or project. I conclude that Denali Holdings is not entitled to relief under § 362(d)(3).

Denali Holding's motion for relief from stay will be granted, in part. It is entitled to adequate protection payments under 11 U.S.C.§ 362(d)(1). It is not entitled to relief from stay under §§ 362(d)(2) and (d)(3), however. An appropriate order and judgment will be entered.

DATED: April 13, 2010.

BY THE COURT

 /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve: G. Spraker, Esq.
       B. Moore, Esq.
       U. S. Trustee

       04/13/10

8